UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD R. DUDLEY, D.C.
d/b/a HEALTHSOURCE CHIROPRACTIC,

                        Plaintiff,          **07-CV-6631**

            v.                              **DECISION AND ORDER**

HEALTHSOURCE CHIROPRACTIC, INC. and
STEPHEN T. DIVITO, D.C.,

                        Defendants.

_____

## **INTRODUCTION**

Donald R. Dudley ("Dudley" or "Plaintiff") brings this action against HealthSource Chiropractic, Inc. ("HealthSource Inc.") and Stephen T. Divito ("Divito") (collectively, "Defendants") alleging trademark infringement, cybersquatting, false designation of origin and unfair competition, seeking monetary damages and a permanent injunction. (Docket No. 1.)  Defendants filed an answer and counterclaim, denying the allegations in the complaint and seeking a declaratory judgment of non-infringement. (Docket No. 10.) Plaintiff moved for a preliminary injunction on January 29, 2008, which this Court denied in a Decision and Order dated September 30, 2008. (Docket No. 37.)

Now before the Court are the parties' cross-motions for summary judgment, filed on December 14, 2011.  Plaintiff moves for partial summary judgment on liability and seeks leave to amend the complaint to substitute DRD HealthSource Chiropractic PLLC as the Plaintiff

1

in this case. (Docket No. 84.) Defendant moves for summary judgment seeking dismissal of Plaintiff's claims and a declaration that they did not infringe Plaintiff's trademark. (Docket No. 83.)

For the reasons set forth below, this Court grants in part and denies in part Defendants' motion for summary judgment.  The Court finds that material issues of fact remain as to the geographic extent of the Plaintiff's trademark rights.  Plaintiff's motion for partial summary judgment and for leave to amend the complaint is denied.

<u>**BACKGROUND**</u>

The following facts are taken from the parties' submissions pursuant to Local Rule 56(a) and the entire record in this case. This case arises from a dispute over the parties' rights to use the mark "HealthSource Chiropractic" in relation to chiropractic services.  Plaintiff claims that he is the senior user of the mark, having used the mark continuously since 2003 in connection with his private chiropractic practice.  Plaintiff asserts trademark rights to the exclusive use of the mark in the greater Rochester area and on the internet.

Plaintiff established his practice in 2003 and obtained a d/b/a certificate for HealthSource Chiropractic from the Monroe County Clerk's office on December 8, 2003.  Plaintiff contends that he has invested significant time and resources to establish and promote his practice. He has developed relationships with several local sports

teams, providing chiropractic services and some cash payments to the teams in return for advertisement and promotional opportunities, such as announcements during games, placement of his logo on the field, commercials during radio broadcasts of games, and advertisements in team magazines. Plaintiff also asserts that he has advertised locally and regionally in the *Yellow Pages*, magazines, newspapers, restaurants, and on local radio. He also registered the domain name healthsourcechiropractic.com and created a web site. Plaintiff claims that his practice extends beyond the City of Rochester to all of Monroe County and the five contiguous counties and that he draws patients from those areas due to his advertising efforts and the geographic location of his clientele.

Defendant HealthSource Inc. is an Ohio corporation founded in 2005 by Chris Tomshack, D.C., who continues as the corporation's CEO. Dr. Tomshack states that after he retired from private chiropractic practice in 2001 he established chiropractic offices in the Ohio area under the name HealthQuest Chiropractic. In 2005, he established a chiropractic franchise, which he named HealthSource Chiropractic, Inc. Dr. Tomshack claims that he decided to use the name HealthSource Chiropractic and the corporate name HealthSource Chiropractic, Inc., because he knew of other chiropractic offices, not related to his franchise, that were operating under the name HealthQuest. Before deciding on the name, Dr. Tomshack states that his counsel conducted a trademark search with the United States

Patent and Trademark Office ("PTO"), the Ohio Secretary of State, and on the internet.  He asserts that he was not aware of Plaintiff's practice in Rochester when he applied for registration of the HealthSource Chiropractic mark.

Dr. Tomshack filed an intent-to-use application with the PTO on November 25, 2005 for the HealthSource Chiropractic mark in relation to chiropractic services, physical therapy, and related medical and radiology services.  On December 5, 2005, after filing the intent-to-use application, he filed for incorporation of HealthSource Chiropractic, Inc. in Ohio.  Dr. Tomshack then filed another intent-to-use application for the HS HealthSource logo on December 15, 2005 and filed an Allegation of Use for HS HealthSource on January 8, 2007 and HealthSource Chiropractic on February 12, 2008.  HS HealthSource was registered by the PTO on July 10, 2007.  HealthSource Chiropractic was registered on May 20, 2008.  Both marks were registered to Dr. Tomshack as an individual.  Dr. Tomshack claims that he licensed the rights to use and sub-license both marks to HealthSource Inc.

Dr. Tomshack registered the domain name healthsourcechiro.com on March 16, 2006. He claims that he chose that domain name because healthsourcechiropractic.com was already taken and there was also less chance for people to misspell chiro than chiropractic.  Dr. Tomshack claims that he was not aware of Plaintiff's web site because it was unavailable or down at the time he registered his

4

domain.

HealthSource Inc. launched its first franchise in April 2006. It currently has 325 franchisees nationwide and claims to have served 300,000 patients.  In April 2007, Dr. Divito opened a HealthSource Inc. franchise in Rochester.  Dr. Divito informed Dr. Tomshack that Dr. Dudley was already using the mark HealthSource Chiropractic in Rochester.  Dr. Tomshack and Dr. Divito agreed that the Rochester location would operate under the name HealthQuest Chiropractic because Dr. Tomshack's Ohio clinics previously operated under that name.

Plaintiff asserts that Defendants' use of the HealthQuest Chiropractic mark in the greater Rochester area causes confusion with his own mark.  Defendants contend that the use of HealthQuest Chiropractic in the Rochester area is not likely to cause confusion with Plaintiff's mark.  Beyond renaming their Rochester franchise location, Defendants assert that they have taken additional steps to minimize confusion with Dr. Dudley's practice.  HealthSource Inc. has removed Dr. Divito's practice from its web site, although the change was reverted for approximately one month in 2010 due to a technical error.  Dr. Divito uses the web site, rochesterspinalcare.com, to promote his practice.  Although Dr. Divito receives advertising templates that contain the term HealthSource from HealthSource, Inc., he replaces references to HealthSource with HealthQuest before the advertisements are

published.   There have been instances of a few advertisements
retaining the mark HealthSource.  However, Defendants claim they are
unaware of any instances of patients contacting or visiting Dr.
Divito's practice when actually looking for Dr. Dudley's practice.

Plaintiff also argues that as the senior user of the
HealthSource Chiropractic mark he has exclusive common law rights
within the City of Rochester, Monroe County, and the five contiguous
counties as well as on the internet.  The Plaintiff asserts that the
use of the mark HealthQuest Chiropractic for Dr. Divito's practice
and the use of HealthSource Chiropractic on the internet intrudes
on his common law trademark rights and causes confusion in the
marketplace.  Plaintiff states, for example:

(1) a search on Google for HealthSource Chiropractic
brings up Defendant's web site first;

(2) third-party web sites such as The-Franchise-
Investigator, Franchise Buyers Network, Franchise Mall,
and BusinessMart.com list HealthSource Inc.'s franchise
alongside Plaintiff's logo;

(3) HealthSource Inc.'s logo is next to Plaintiff's
listing in the America Online ("AOL") Yellow Pages;

(4) Plaintiff has received emails directed to
HealthSource Inc. from third-party web sites such as The
Franchise Mall, AOL yellow pages, Diet1Doc, and
Reputation Repair Services;

(5) Plaintiff has received telephone calls inquiring about the HealthSource franchise system or offering to provide services to the franchise; and

(6) the Rochester Razorsharks accidently linked to HealthSource Inc.'s web site instead of Plaintiff's web site.

Defendants respond that the Plaintiff does not have priority to use the mark on the internet; and even if he did, it would be unfair to preclude the federal registrant from using its mark on the internet. They further contend that the area within which Plaintiff seeks exclusive rights to use the HealthSource mark is unreasonably large.

## DISCUSSION

### I. Standard of Review.

Federal Rule of Civil Procedure 56 ("Rule 56") provides that summary judgment shall be granted if the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden to demonstrate the absence of any genuine issue of material fact or to show that the non-moving party "has failed to make a sufficient showing on an essential element" of its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to show the existence of a disputed issue of material fact, Boyce v. Bank of New York, 226

7

F. App'x 17, 18 (2d Cir. 2006), or to make a showing sufficient "to establish the essential elements [] on which it bears the burden of proof at trial," <u>Liles v. New York City Dept. of Educ.</u>, 516 F. Supp. 2d 297, 307 (S.D.N.Y. 2007).   In considering the motion, all evidentiary inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.   <u>Gallo v. Prudential Residential Services</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).

## II. <u>HealthSource Inc.'s federal registration.</u>

Plaintiff opposes Defendants' motion for summary judgment, arguing for the first time that HealthSource Inc.'s federal registration of the HealthSource mark is invalid.   Defendants respond that it is improper for the Plaintiff to raise this argument for the first time in opposition to a motion for summary judgment.

Federal procedural rules require that the parties' claims and defenses be contained within the pleadings in order to give both parties and the court notice of the issues raised in the case.   Fed. R. Civ. P. 8.   If a party wishes to add a claim or defense, then that party may move to amend the pleadings; or "if summary judgment has been granted to their opponents, [the party may] raise the issue in a motion for reconsideration."   <u>Greenidge v. Allstate Ins. Co.</u>, 446 F.3d 356, 361 (2d Cir. 2006).   A party may not, however, raise an issue for the first time in an opposition to a motion for summary judgment and expect the court to grant leave to amend the pleadings *sua sponte*.   <u>Id.</u> (declining to consider an argument raised for the

first time in opposition to summary judgment).

Here, the Plaintiff never questioned the validity of the Defendants' federal registration either in his Complaint or in his Answer to the Defendants' counterclaim.  Raising the issue for the first time in opposition to Defendants' motion for summary judgment is improper and untimely, and therefore the Court declines to consider the issue in this motion.

III. **Trademark infringement under the Lanham Act.**

Plaintiff alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a), for the Defendants' use of HealthQuest Chiropractic in the Rochester Area and the use of HealthSource Chiropractic on the internet.  To prove infringement of common law trademark rights under the Lanham Act, the Plaintiff must establish that: (1) the mark is valid and legally protectable, (2) the Plaintiff has a right to exclusive use of the mark, and (3) the defendant's use of the mark was likely to create confusion regarding the source of the goods or services.  Marshak v. Treadwell, 240 F.3d 184, 198 (3d Cir. 2001).

**A. Plaintiff's mark is legally protectable.**

In its Decision and Order denying Plaintiff's motion for a preliminary injunction, this Court made a preliminary finding that the HealthSource Chiropractic was "at most descriptive," but was entitled to protection because it had likely acquired secondary meaning within the Rochester area.  See Dudley v. HealthSource

9

Chiropractic, Inc., 585 F. Supp. 2d 433, 438-440 (W.D.N.Y. 2008);
(Docket No. 37.)  The Plaintiff contends, as he did in his motion
for a preliminary injunction, that the mark is suggestive and
legally protectable without having to show secondary meaning.  The
Defendants argue that this Court's previous categorization of the
mark was correct, but they contend that the Plaintiff has not shown
secondary meaning prior to the constructive use date, November 25,
2005.

Determinations of law and fact made by a court when granting
or denying a preliminary injunction are not binding on summary
judgment.  See Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101
S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).  Based on the complete
record, the Court has reviewed its findings and now finds that the
mark is suggestive.

Marks are classified into four levels of distinctiveness:
generic, descriptive, suggestive, and arbitrary or fanciful.  Star
Indus. v. Bacardi & Co., 412 F.3d 373, 384-385 (2d Cir. 2005).
Generic marks consist of words which are commonly used to identify
the products or services and are not protectable under the trademark
laws.  Id. at 385.  Descriptive marks describe the product or
service by identifying its qualities.  Id.  Descriptive marks are
not considered inherently distinctive but may become protectable if
they have acquired secondary meaning within the minds of the
consuming public.  Id.  Suggestive marks do not directly describe

10

the qualities of the product or service but may suggest its qualities through the use of "imagination, thought, or perception." Id. Arbitrary or fanciful marks communicate no information about the product or service. Id. Suggestive marks and arbitrary or fanciful marks are considered inherently distinctive and do not require a showing of secondary meaning to be legally protected. Id.

The classification of a mark is generally a question of fact. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999) (stating that the factual question is how the purchasing public views the mark). A mark's categorization follows from its inherent distinctiveness and should be determined by considering the mark compared to the product or service it describes from the viewpoint of the purchasing public. See TCPIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88, 97 (2d Cir. 2001). At summary judgment, a party disputing the classification of a mark must present evidence beyond the mark itself and the nature of the product or service to raise a material issue of fact for a jury. Lane Capital Mgmt., 192 F.3d at 346. The evidence presented must allow the trier of fact to resolve the issue without resorting to "surmise, speculation, and conjecture." Id. When the facts relating to classification are not in dispute, however, the issue may be decided as a matter of law. See e.g., Black & Decker Corp. v. Dunsford, 944 F. Supp. 220, 225-226 (S.D.N.Y. 1996).

After reviewing the entire record, this Court finds that there

are no issues of fact with respect to classification of the mark and that Plaintiff's mark is suggestive.  A suggestive mark can be distinguished from a descriptive mark by considering (1) whether imagination is necessary to connect the mark to some characteristic of the product, (2) whether competitors use the term as a trademark or use the term to describe their product or service, and (3) whether the use of the term would deprive competitors of a way to describe their goods.  <u>Menashe v. V Secret Catalogue, Inc.</u>, 409 F. Supp. 2d 412, 423 (S.D.N.Y. 2006).

First, HealthSource Chiropractic does not directly describe chiropractic services but requires imagination to make the connection. The consumer must use their imagination to understand that chiropractic services are a health benefit and that the provider of those services is, therefore, a source of health benefits. Second, the Defendant, as a competitor, is using HealthSource as a service mark and business name, not as a term that describes chiropractic services.  Lastly, neither party suggests that the term HealthSource describes a quality of chiropractic services. Allowing the term HealthSource to be used as a servicemark will in no way remove from the language a way of describing chiropractic services. Dr. Tomshack specifically stated that he choose the term HealthSource because other chiropractors were not using that term.  Tomshack Decl. ¶ 7. Accordingly, this Court finds that the mark HealthSource is suggestive, inherently distinctive,

and entitled to protection without a showing of secondary meaning.

**B. The Plaintiff is a senior user of the HealthSource Chiropractic mark.**

Federal registration of a mark grants nationwide priority as of the filing date of either an application for registration or an intent-to-use application.   See 15 U.S.C. § 1057(c).   Federal registration, however, does not give priority over persons who had used and had not abandoned the mark prior to filing.   15 U.S.C. § 1057(c)(1).  A senior user retains common law rights to exclusively use the mark within its territory of prior use.  Allard Enterprises, Inc. v. Advanced Programming Res., Inc., 249 F.3d 564, 573 (6th Cir. 2001).  A senior user can accrue rights even if the initial uses of the mark are not extensive and do not result in widespread recognition.  See Allard Enterprises, Inc. v. Advanced Programming Res., Inc., 146 F.3d 350, 358 (6th Cir. 1998).

Plaintiff has presented uncontroverted evidence that he used the HealthSource Chiropractic mark in commerce prior to HealthSource Inc.'s constructive use date.  Dr. Dudley filed a d/b/a certificate on December 8, 2003.  Dudley Aff., January 21, 2008, Ex. 1.  He registered the healthsourcechiropractic.com domain name on January 20, 2004.  Dudley Opp. Aff. Ex. 4.  The evidence establishing use in commerce includes: letters to and from health insurance companies and medicare, a contract and advertisements with the Rochester Americans, an advertisement in the Yellow Pages, and newspaper articles.  See Dudley Reply Aff. Ex. 2; Dudley Opp. Aff. Ex. 1-33;

13

O'Brien Opp. Decl. Ex 2.   Accordingly, this Court finds that
Plaintiff has established genuine use in commerce of the
HealthSource mark prior to HealthSource Inc.'s constructive use
date.  The Plaintiff is therefore the senior user of the mark, while
the Defendant is the junior user and federal registrant.

### 1. Plaintiff's "zone of exclusivity" was fixed on July 10, 2007.

For the Plaintiff to assert a trademark infringement claim
based on common law rights as the senior user, he must first
demonstrate the territorial extent of his rights.  See Allard
Enterprises, 249 F.3d at 572.  Federal registration confers
nationwide territorial rights whether or not the registrant actually
uses the mark nationwide or only in a limited territory.  Dawn Donut
Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 362 (2d Cir. 1959).
Those rights are subject to any superior common law rights acquired
by another party through actual use of the mark prior to federal
registration.  Allard Enterprises, 249 F.3d at 572.  A party that
has used the mark retains exclusive rights within its zone of prior
use, its "zone of exclusivity."  Id. at 573.

Federal law allows an applicant to establish a constructive use
date by filing an intent-to-use application before actual use of the
mark in commerce.  When the senior user of the mark is the federal
registrant, its nationwide priority is fixed on the constructive use
date.  Id. at 572.  However, when the junior user is the federal
registrant, the senior user's territorial rights are not frozen

14

until the date of actual registration of the mark by the junior user. Id.   In this case, Plaintiff is the senior user of the mark. Dr. Tomshack's federal registration of the HealthSource logo was issued on July 10, 2007.   Jacquinot Decl. Ex. G.   Plaintiff, therefore, has territorial rights to the geographic area in which he established common law trademark rights prior to July 10, 2007.

## 2. Plaintiff's "zone of exclusivity".

The parties dispute the extent of the geographic area in which Plaintiff would have exclusive rights to use the mark.   The Plaintiff contends that his practice is regional and includes Monroe County and the five contiguous counties.   The Defendants concede that Plaintiff has priority in at least some parts of Monroe County, but they argue that the area demanded by the Plaintiff is unreasonably large. The Defendants contend that a chiropractic practice normally includes patients within a radius of just three to five miles and pulls from a population of roughly 50,000 people. Defendants argue that the Plaintiff is claiming an area with a population 22 times that size.

In support of the extent of his practice, the Plaintiff has presented a breakdown of his client list by postal code.   Dudley Reply Aff. March 19, 2008, ¶ 11, Ex. 5.   While the majority of clients are within Monroe County, the list shows clients outside of the county as well.   However, the client list does not show when the Plaintiff rendered services to each client.   Without that

15

information, the list does not establish which locations were serviced by the Plaintiff prior to July 10, 2007. The Plaintiff also presents evidence that he works with local sports teams and advertises on radio stations that broadcast throughout the Greater Rochester Area. Dudley Aff. ¶ 20; Dudley Opp. Aff. ¶ 12. The Plaintiff claims he has spent almost $74,000 in advertising and traded an additional significant amount of his services for advertising exposure. Dudley Opp. Aff. ¶ 6; Jacquinot Decl. Ex. Z. However, it is unclear from this record the actual geographic reach of his advertising and what regional advertising was used, consistently, prior to July 10, 2007.

Courts have found several factors relevant to determining the geographical extent of market penetration. For example, (1) volume of sales; (2) growth trends; (3) number of buyers in ratio to potential customers; and (4) amount of advertising. See Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1398-1399 (3rd Cir. 1985) (citing cases). Further, to establish use primarily through advertising (and not actual sales), the advertising must be open and notorious and "'of such a nature and extent' that the mark has become 'popularized in the public mind'" to associate the mark with the product or service's provider. Am. Express Co. v. Goetz, 515 F.3d 156, 161-2 (2d Cir. 2008) (citation omitted). Other than his advertising efforts, Plaintiff has not presented evidence on any of these factors relative to the date when his territory was frozen,

July 10, 2007.  Plaintiff has also not presented evidence of the exact territories reached by his advertising efforts nor has he presented anything more than speculation that his mark became "popularized in the public mind" by July 10, 2007.  See National Footwear, 760 F.2d at 1397-1398(quoting 15 U.S.C. §1115(b)(5)("defense of prior use applies 'only for the area in which ... continuous prior use is proved.'")) (last emphasis added). While there is evidence that Plaintiff's advertising efforts have, at some point, reached customers outside of the city of Rochester and Monroe County, and that he has had some clients from outside those areas, it is unclear whether he established trademark rights in those areas before July 10, 2007, and if so, which areas were reached.

Based on the current state of the record, the Court finds that there are questions remaining regarding the extent of Plaintiff's "zone of exclusivity."  Accordingly, Plaintiff's request for injunctive relief covering the inclusive area of Monroe County and the five contiguous counties is denied as the proof submitted is insufficient at this time.  However, unless the parties can agree on a consent decree regarding the geographic area of the Plaintiff's exclusive rights to use the HealthSource mark, in the interest of judicial economy, Plaintiff may have until November 5, 2012 to submit additional proof on this issue. Plaintiff may have additional discovery as needed.

### 3. Likelihood of confusion of HealthSource Chiropractic and HealthQuest Chiropractic.

Having established that Plaintiff is entitled to superior common law rights at least within some area of Monroe County, the Court must determine whether the Defendants' use of HealthQuest Chiropractic in that area creates a likelihood of confusion. Eight non-exclusive factors are used to assess likelihood of consumer confusion. Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 256 (2d Cir. 1987) (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)).  No one factor is dispositive, and each factor must be considered in light of the ultimate question. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 872 (2d Cir. 1986).  The question is not one of possibility of confusion but probability of confusion among ordinarily prudent consumers. Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1511 (2d Cir. 1997).  When the underlying facts are not in dispute, the balancing of the factors is a matter of law. See Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000).  Here, both parties agree that the material facts with respect to this issue are not in dispute. Pl. Br. at 10; Def. Resp. at 15.

### i. The strength of the mark.

The strength of a mark encompasses both its inherent distinctiveness and its acquired distinctiveness. Playtex Products, Inc. v. Georgia-Pac. Corp., 390 F.3d 158, 163 (2d Cir. 2004).

Plaintiff's mark is a suggestive mark with some degree of inherent distinctiveness.   See supra at 11-12.   Accordingly, this factor favors the Plaintiff.

### ii. Similarity between the two marks.

To determine the degree of similarity, the court must look to the overall impression the mark makes on a consumer.   See Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005).   The court should look not only to the words of the mark but also how the mark is displayed in the marketplace.   See The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 962 (2d Cir. 1997).

HealthSource and HealthQuest differ by only a single word; however, that word gives a substantially different impression and has a substantially different meaning.   Quest means to seek or search out, and HealthQuest gives the impression of seeking health. See Webster's Third New International Dictionary, unabridged 1863 (2002).   Comparatively, source means a point of origin.   See id. at 2177.   HealthSource gives the impression of the place where health can be obtained.   The words source and quest also have significantly different aural tones.

The HealthSource and HealthQuest logos used by the Plaintiff and Defendant Divito are also distinctive. HealthSource Chiropractic is displayed in an italicized font on top of a textured blue background that gives the impression of water ripples.   HealthQuest

Chiropractic is in bold block letters on a white background.  A distinctive HQ also proceeds the word HealthQuest.

Accordingly, this Court finds that the marks are not substantially similar and that this factor does not weigh in favor of the Plaintiff.

### iii. **The competitive proximity**.

Both the Plaintiff and Dr. Divito offer chiropractic services in the Rochester area.  This factor favors the Plaintiff.

### iv. **Actual confusion**.

Trademark infringement "protects only against mistaken purchasing decisions and not against confusion generally." Lang v. Ret. Living Pub. Co., Inc., 949 F.2d 576, 583 (2d Cir. 1991). Actual confusion can be shown by evidence of "'diversion of sales, damage to goodwill, or loss of control over reputation.'" The Sports Auth., 89 F.3d at 963) (citing Lang, 949 F.2d at 583).  A few instances of customer confusion is insufficient to show actual confusion, but those instances may weigh in favor of a likelihood of confusion. Dudley, 585 F. Supp. 2d at 445.

Plaintiff has not presented consumer surveys or other empirical evidence that shows that Dr. Divito's mark causes confusion with Plaintiff's mark.  Instead, to establish actual confusion, Plaintiff states that he has received phone calls and emails directed to the Defendants.  He specifically cites to an incident where a third-party insurance vendor contacted his office claiming that he worked

with other HealthSource companies.  Dudley Decl. ¶ 68, Ex. C.  These types of inquires do not relate to purchasing decisions by those seeking Plaintiff's services; thus, they are not the type of confusion protected by the trademark laws.  Comparatively, Defendant Divito stated that he asks clients to specify on their intake forms how they were referred to his practice, and he is unaware of any instance of confusion between his practice and that of Dr. Dudley's practice. Def. Statement of Undisputed Facts ¶¶ 76-78.  Accordingly, this Court finds that there is no evidence of actual confusion, and this factor weighs in favor of the Defendants.

### v. The likelihood that the plaintiff will bridge the gap between the two markets.

This factor favors the Plaintiff because Dr. Dudley and Dr. Divito compete in the same market, thus there is "no gap to bridge." See Kookai, S.A. v. Shabo, 950 F. Supp. 605, 608 (S.D.N.Y. 1997).

### vi. The defendant's good faith in adopting its mark.

This factor looks at whether the defendant "adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill."  See Lang, 949 F.2d at 583.  When Dr. Divito purchased a franchise from HealthSource Inc., he agreed to use the name HealthQuest Chiropractic because Dr. Dudley was already using HealthSource Chiropractic in the Rochester area.  Tomshack Decl. ¶ 21; Divito Decl. ¶ 7.  The name HealthQuest Chiropractic was chosen because Dr. Tomshack previously operated offices using that name.

Tomshack Decl. ¶ 4.  There is no evidence in the record that the name was chosen in bad faith.  Accordingly, this factor favors the Defendants.

### vii. The quality of the defendant's product.

The question addressed by this factor is whether the senior user's reputation could be jeopardized by being associated with a junior user's product of inferior quality. <u>Arrow Fastener Co., Inc. v. Stanley Works</u>, 59 F.3d 384, 398 (2d Cir. 1995).  Plaintiff does not argue that the Defendants' services are inferior to his own. Plaintiff instead argues that any confusion linking his practice with Dr. Divito's may damage his reputation because Dr. Divito was allegedly involved in a fatal car accident and charged with a DWI that garnered some local publicity.  While protecting his reputation is a valid concern, under these circumstances, it is merely speculative.  The Plaintiff has presented no evidence that Dr. Divito's accident has tarnished, or is likely to tarnish, the reputation of his practice.  Accordingly, because there are no material issues of fact as to the quality of Dr. Divito's services or his reputation as a chiropractor (notwithstanding his recent, unrelated legal problem), the Court finds that this factor favors the Defendants.

### viii. The sophistication of the purchasers.

The more sophisticated the consumer of the service, the less likely he or she will be confused by similar marks.  <u>Savin Corp. v.</u>

Savin Group, 391 F.3d 439, 461 (2d Cir. 2004).  Plaintiff does not address this factor, but previously conceded that consumers of chiropractic services could be expected to exercise great care in making a selection of their service provider.  Because chiropractic services are an individualized, professional service, a consumer is less likely to be confused as to source of the service. Accordingly, this factor weighs against finding a likelihood of confusion.

### ix. Weighing the factors.

Taking all the factors together, the parties offer the same services in the same geographic area.  Plaintiff has demonstrated he has a strong mark entitled to some protection.  However, Plaintiff has not shown that the Defendants' mark is sufficiently similar to warrant a finding of likelihood of confusion.  Although similar, they are distinguishable.  There is no evidence in the record of actual confusion, and the sophistication of a chiropractic patient and the individualized nature of the service reduces the possibility of confusion.  Lastly, Dr. Divito adopted his mark, different from his franchisor, in good faith specifically to avoid intruding on Plaintiff's practice.  Accordingly, this Court finds that there is not a likelihood of confusion between the HealthSource Chiropractic and HealthQuest Chiropractic marks.  Plaintiff's trademark infringement claim under 15 U.S.C. § 1125(a) with respect to Defendants' use of HealthQuest Chiropractic in the Rochester area

is dismissed.

**D. Defendants' use of HealthSource Chiropractic on the internet.**

The Plaintiff contends that he is the senior user of the HealthSource Chiropractic mark not only in the greater Rochester area but also on the internet.  He argues that the Defendants' use of the mark infringes upon his right to priority on the internet and intrudes on his territorial exclusivity within the greater Rochester area.  The Defendants respond the Plaintiff does not have priority on the internet; and if internet exclusivity were granted to a common law user, it would undermine the purpose of federal registration.

The purpose of the trademark laws is to avoid using a mark in a way that causes confusion, deception, or mistake as to the origin of a product or service.  15 U.S.C.A. § 1127(a)(1)(A).  Geographical zones of exclusivity developed to protect the rights of concurrent, innocent adopters who used the same mark in different geographic areas.  See United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 100, 39 S. Ct. 48, 51-52, 63 L. Ed. 141 (1918).  There is little likelihood of confusion, deception, or mistake when a mark is used by different businesses in distinct regions of the country.  Id.

Federal registration is required to secure nationwide priority in a mark.  See 15 U.S.C. § 1057(c).  Common law trademark rights only extend to the territories in which the mark's adopter sells its products, renders its services, establishes recognition of its mark,

or draws its trade.  Tana v. Dantanna's, 611 F.3d 767, 780 (11th Cir. 2010).  A user of a mark who does not seek federal registration risks the possibility that another user will independently adopt the same mark and establish exclusive rights to use the mark in a remote area.  United Drug Co., 248 U.S. at 103, 39 S. Ct. at 53.  The trademark laws allow concurrent use of the same mark by multiple adopters so long as each adopter's use of the mark does not unreasonably intrude on another user's geographic zone of exclusivity.  See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 233 (4th Cir. 2002).  By allowing concurrent use of a mark, the trademark laws tolerate a certain amount of confusion.

Geographic zones of exclusivity are not inviolate but must accommodate reasonable intrusion when it becomes impracticable to exclude another lawful user.  For example, courts have held that an almost-national user of a mark should not be precluded from engaging in national advertising activities that cannot reasonably be geographically restricted.  See Tree Tavern Products, Inc. v. Conagra, Inc., 640 F. Supp. 1263, 1273 (D. Del. 1986) (enjoining sales within the plaintiff's geographic area but allowing national advertising); V&V Food Products, Inc. v. Cacique Cheese Co., Inc., 86 C 8695, 2003 WL 255235 (N.D. Ill. Feb. 4, 2003) (allowing national advertising on a Spanish speaking network and dismissing as impractical methods that could avoid intruding on another user's territory).

25

By claiming exclusivity to the HealthSource Chiropractic mark on the internet, the Plaintiff assumes that the internet is a territory in which he can establish exclusive rights.  The internet is not, however, a geographic territory to be subdivided; instead, it is a global communication medium that is accessible from anywhere on the planet.  The internet has become vital for local, regional, national, and international communication.  It is used for selling, advertising, and marketing products and services as well as communicating with clients and customers.  An internet presence has become crucial for businesses of all sizes, whether they operate locally or nationally.

The rights of concurrent users would be substantially harmed if one user were able to monopolize the internet to the exclusion of other lawful users of the same mark.  If, as the Plaintiff suggests, a senior common law user could claim exclusive use on the internet, then it would undermine the benefits and security provided by federal registration.  A federal registrant could never be certain that its rights extended to the internet and that a senior user would not come forward claiming priority and exclusivity to the internet.  Similarly, allowing a federal registrant exclusive use of the mark on the internet would undermine the territorial rights of a senior user.  Unlike national advertising which would often be cost-prohibitive for a local or regional user, the internet is an almost-necessary tool for a user to develop its business and remain

competitive within its exclusive territory.  Restricting internet use to the federal registrant would therefore equally undermine the territorial rights of a senior common law user.  Consequently, this Court  concludes that neither party can claim exclusive rights to the internet.  See Allard Enterprises, 249 F.3d at 575 (stating that some form of concurrent use of the internet by multiple users of a mark seems necessary).

Even though concurrent, lawful users of a mark should be allowed to use their marks on the internet, use on the internet cannot be manipulated to intrude on another's territory in bad faith.  See Harrods, 302 F.3d at 234 (stating that a domain name is registered in bad faith if done "with the intent of expanding its use of the shared mark beyond its geographically restricted area").  For instance, it would be improper for a user to target internet advertisements to consumers within another user's exclusive territory or to advertise on locally focused web sites that target that market.  See Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc., 639 F. Supp. 750, 2 U.S.P.Q.2d 1172 (D. Mass. 1986), aff'd, 831 F.2d 1177, 4 U.S.P.Q.2d 1709 (1st Cir. 1987) (allowing state and national advertising but restricting advertisements directed at the local markets encompassed within the other user's zone of exclusivity).

In this case, the Defendants have taken reasonable measures to ensure that they are not using the HealthSource Chiropractic mark

on the internet to intrude into the Plaintiff's territory.   The Defendants have removed Dr. Divito's practice completely from HealthSource Inc.'s web site.   Dr. Divito maintains his own web site, rochesterspinalcare.com, for his Rochester practice and only uses the HealthQuest mark on his web site.   The Plaintiff has presented no evidence that indicates the Defendants have used the HealthSource mark on the internet to specifically target the Rochester market.

The Plaintiff additionally asserts that HealthSource Inc.'s use of the HealthSource Chiropractic mark on the internet creates so much confusion that he will be forced to rebrand.   Plaintiff complains that a Google search for "HealthSource Chiropractic" brings up HealthSource Inc.'s web site as the first result and Plaintiff's web site as the second.   Also, a search for "HealthSource" and "Divito" brings up Dr. Divito's Facebook profile which has the HealthSource keyword in Dr. Divito's friends, activities, and interests pages.   Plaintiff further presents evidence of what he claims is actual confusion showing that the Rochester Razorsharks mistakenly linked to the Defendants' web site instead of his own, that third-party web sites listed Defendants' franchise but Plaintiff's logo, and that Plaintiff has received calls and emails directed to the HealthSource Inc.   However, this is not the type of confusion that the trademark laws are designed to prevent.   See Lang, 949 F.2d at 583 (stating that the confusion

relevant for trademark infringement is mistaken purchasing decisions not confusion generally).  The Plaintiff admits that he is not aware of any patient or potential patient that was directed away from his practice as a result of the Defendants' use of the HealthSource mark on the internet.  Jacquinot Decl. Ex. Y.

A trademark owner cannot reasonably expect to have exclusive use of a term on the internet.  Defendants presented evidence that as of 2008 there were 754 registered domain names with that included the term "healthsource."  Jacquinot Decl. Ex. L.  Users of a mark must develop ways to distinguish themselves on the internet beyond resorting to the trademark laws.  See Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 968 (C.D. Cal. 1997) aff'd, 194 F.3d 980 (9th Cir. 1999) (stating that the solution to difficulties faced by trademark owners on the internet is innovation).  Accordingly, because he cannot establish exclusive rights on the internet, the Plaintiff's claim for trademark infringement under 15 U.S.C. § 1125(a) with respect to the Defendants' use of the HealthSource Chiropractic mark on the internet is dismissed.

## IV. **Plaintiff's cybersquatting claim.**

The Plaintiff alleges that HealthSource Inc.'s use of the domain name, healthsourcechiro.com, is a violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  An ACPA claim requires that (1) the plaintiff's mark is

either distinctive or famous, (2) the defendant's domain name is either identical or confusingly similar to the plaintiff's mark, and (3) the defendant had a bad faith intent to profit from the use of the plaintiff's mark.  See Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 497-99 (2d Cir. 2000).

The ACPA lists nine non-exclusive factors to determine whether a person has a bad faith intent to profit from the use of another's mark: (1) whether the defendant has trademark rights in its domain name; (2) whether the domain name consists of the defendant's legal name; (3) whether the defendant previously used the domain name in connection with the sale of goods or services; (4) whether the web site is of a commercial or non-commercial nature; (5) whether the defendant had an intention to divert customers away from the plaintiff's web site; (6) whether the defendant has offered to transfer, sell, or assign the domain name for commercial gain; (7) whether the defendant provided misleading or incorrect contact information when registering the domain name; (8) whether the defendant registered multiple identical or confusingly similar domain names; and (9) the extent to which the defendant's domain name is not distinctive or famous.  See 15 U.S.C. § 1125(d)(1)(B)(I).

The Plaintiff has failed to show bad faith on the part of the Defendants.  HealthSource Inc.'s domain name is an abbreviation of its federally registered trademark.  Jacquinot Decl. Ex. G, H.  The

domain name is also the legal name of the corporation. Jacquinot Decl. Ex. F. Although the Defendants did not use the HealthSource Chiropractic mark prior to registering their domain name, Dr. Tomshack used the similar HealthQuest Chiropractic name and explained that he decided to register HealthSource Chiropractic instead to avoid competition with other HealthQuest clinics. Tomshack Decl. ¶¶ 4, 6. There is no indication that the Defendant sought to divert Plaintiff's customers, as Dr. Tomshack initially used the mark in Ohio, not New York. Id. The Defendant has used its domain name in relation to its own business and has not sought to transfer or sell the domain name for financial gain. There is no evidence that the Defendant did not provide the correct contact information when it registered its domain name. Lastly, the domain name healthsourcechiro.com is distinctive like the HealthSource mark itself. See supra at 13. The only factor favoring the Plaintiff is that the Defendant attempted to register multiple derivations of its domain name. Tomshack Decl. ¶ 13. The Court, however, does not find that this factor alone is indicative of bad faith. Accordingly, the Court finds that the Plaintiff has not met its burden to establish bad faith, and the Plaintiff's ACPA claim is dismissed.

**V. Plaintiff's state and common law claims.**

Plaintiff also alleges trade name infringement, unfair competition, and injury to business reputation under New York

General Business Law §§ 360-k, 360-l, and 360-m, as well as common law trade name infringement and unfair competition. Claims of violations of New York General Business Law sections 360-k and 360-m require that the Plaintiff's mark is registered with New York State. The Plaintiff has not shown that his mark is registered. Accordingly, Plaintiff's claims for violations of sections 360-k and 360-m are dismissed.

Plaintiff's claim under New York General Business Law section 360-l requires that the marks used by the Plaintiff and Defendant be substantially similar. Fed. Exp. Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 177 (2d Cir. 2000).  This Court has already found that the HealthSource Chiropractic and HealthQuest Chiropractic are not substantially similar. See supra at 18-19. Accordingly, Plaintiff's claim under section 360-l is dismissed.

Plaintiff's common law claim for unfair competition requires (1) either actual confusion or likelihood of confusion and (2) bad faith on the part of the defendant. Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 35 (2d Cir. 1995).  The Plaintiff has not shown actual confusion or a likelihood of confusion for the Defendants' use of the HealthQuest Chiropractic mark in the Rochester area, nor has the Plaintiff shown bad faith for the Defendants' use of HealthSource Chiropractic on the internet. See supra at 19, 22, 29. Accordingly, Plaintiff's common law claim for unfair competition is dismissed.

Finally, the test for common law trademark infringement is essentially the same as that for trademark infringement under federal law.  <u>Black & Decker</u>, 944 F. Supp. at 228.  Because the Plaintiff failed to make out a valid federal trademark infringement claim, Plaintiff's common law claim must fail as well.

## VI. <u>The Plaintiff's motion to amend the complaint.</u>

The Plaintiff seeks leave to amend the complaint to add DRD HealthSource Chiropractic, PLLC as the real party in interest.  The Defendants object arguing undue delay and lack of documentation showing the transfer of the assigned claim and chain of title to the Plaintiff's mark. Rule 15 of the Federal Rules of Civil Procedure states that a court should freely grant leave to amend the pleadings when justice so requires.  Leave can properly be denied for undue delay.  <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).  The Plaintiff filed his PLLC registration on June 5, 2009.  In its Revised Scheduling Order, this Court set a deadline of August 23, 2010 for motions to amend the pleadings.  The instant motion was not filed until December 14, 2011.  This Court finds that Plaintiff's delay in requesting amendment is undue and therefore denies the request.

### <u>CONCLUSION</u>

For the reasons set forth above, this Court grants in part and denies in part the Defendants' motion for summary judgment and dismisses Plaintiff's federal, state, and common law claims.  This

Court finds that Defendants are not infringing Plaintiff's mark by using the HealthSource Chiropractic mark on the internet or using the HealthQuest Chiropractic mark in the Rochester area. Questions of fact remains with respect to the territorial extent of Plaintiff's exclusive rights to use the HealthSource mark in the Rochester area market, and Plaintiff may have until November 5, 2012 to submit additional proof on this issue. Plaintiff's motion for partial summary judgment on the issue of liability and leave to amend his complaint are denied.

**ALL OF THE ABOVE IS SO ORDERED.**

    S/ MICHAEL A. TELESCA
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      Rochester, New York
            August 7, 2012